UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

———————————————————————————

| | |
|---|---|
| ASHU GARG, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| VHS ACQUISITION SUBSIDIARY NO. 7, INC. | ) |
| d/b/a SAINT VINCENT HOSPITAL, | ) |
| DAVID BADER, JOHN MUKAI, and, | ) |
| DOUGLAS BURD | ) |
| Respondents. | ) |

Civil Action No.  MC-21-05-R

———————————————————————————

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION TO QUASH NON-PARTY SUBPOENA

Petitioner Ashu Garg ("Dr. Garg") is a hardworking and dedicated physician who was denied an equal opportunity to complete his radiology residency with the Respondents because of his age. Respondents terminated his employment after he complained of the disparate treatment, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and Massachusetts General Laws, Chapter 151B (Massachusetts's anti-discrimination law). Dr. Garg filed a complaint against Respondents in the United State District Court for the District of Massachusetts. *See Dr. Ashu Garg v. VHS Acquisition Subsidiary No. 7 d/b/ a Saint Vincent Hospital, et al.*, Civil Action No. 4:20-cv-40060-DHH (D. Mass 2020) (Timothy S. Hillman, J.) (the "Massachusetts Case").

In connection with the Massachusetts Case, Respondents issued a Subpoena to the Board of Regents of the University of Oklahoma (the "University"), a non-party to the Massachusetts Case and one of Dr. Garg's former employers, seeking material concerning Dr. Garg's prior employment with the University and a Confidential Settlement Agreement entered between Dr. Garg and the University. This Court should quash the Subpoena because Dr. Garg's employment

and the Confidential Settlement Action are irrelevant to the Massachusetts Case, Dr. Garg's privacy interest in this material outweighs any purported relevance, the Subpoena seeks privileged information, and the Subpoena is facially overbroad.[1] Further, Respondents should be ordered to pay Dr. Garg's reasonable attorney fees in connection with this action (along with the costs of initiating this action and admission of his Massachusetts counsel *pro hac vice*) because the Subpoena was clearly designed to harass Dr. Garg and needlessly increase the cost of litigation.

## FACTUAL BACKGROUND

Dr. Garg is a licensed physician and surgeon who desired to become a radiologist with the ultimate career goal of receiving specialized training in Interventional Radiology. He completed three of the five requisite post-graduate years ("PGY") for a radiology residency by July 2016. Dr. Garg then continued the fourth year of his residency with Respondent VHS Acquisition Subsidiary No. 7, Inc. d/b/a Saint Vincent Hospital ("SVH"), a community hospital in Worcester, Massachusetts. Dr. Garg was 46 years old when he began the residency at SVH and, upon information and belief, he was the oldest resident in the program.

---

[1]       Although "[t]he general rule is that only the person to whom the subpoena is directed has standing to object to its issuance. … An exception to that rule occurs where the challenging party asserts a personal right or privilege with respect to the materials subpoenaed." *Kittles v. Harav, L.L.C.*, No. CIV-18-720-D, 2019 WL 6053022, at *1 (W.D. Okla. Nov. 15, 2019). For example, "courts have found a 'personal right' sufficient to confer standing where… the subpoena sought the movant's employment records." *Scallion v. Richardson*, No. CV-17-992-G, 2018 WL 6037536, at *2 (W.D. Okla. Nov. 16, 2018); *see also Arista Recs. LLC v. Does 1-27*, 584 F. Supp. 2d 240, 253 n.17 (D. Me. 2008) (students have standing to object to subpoena commanding university to produce their records). Likewise, courts have also found standing where the moving party entered into a settlement agreement that is sought through the subpoena. *See, e.g., Church v. Dana Kepner Co.*, No. 11-CV-02632-CMA-MEH, 2013 WL 24437, at *1 (D. Colo. Jan. 2, 2013). Here, as the Subpoena primarily seeks documents related to Dr. Garg's employment with the University, and the Confidential Settlement Agreement they entered, Dr. Garg therefore has standing to object and to bring the petition. But even where "a moving party lacks standing to challenge a third-party subpoena, a court may exercise its inherent authority to limit irrelevant or non-proportional discovery requests pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)." *Sparkman v. Liberty Mut. Fire Ins. Co.*, No. CIV-20-710-R, 2021 WL 1646653, at *4 (W.D. Okla. Apr. 27, 2021).

During the course of his residency at SVH, Dr. Garg noticed that he was treated less favorably than the younger residents. On multiple occasions, Dr. Bader singled Dr. Garg out without reason. Respondent Douglas Burd ("Dr. Burd"), a faculty member of SVH's Radiology Residency Program, also provided unreasonable criticism of Dr. Garg's radiology readings, while being lax with the younger residents. Further, Respondent John Mukai ("Dr. Mukai"), another faculty member of SVH's Radiology Residency Program, made offensive age-related comments toward Dr. Garg. Dr. Garg complained to Dr. Bader about the disparate treatment.

SVH offered Dr. Garg the opportunity to complete his PGY5 – Final Year of Residency Training in April of 2017. Thereafter, after Dr. Garg complained about the disparate treatment, Respondents abruptly reversed course the following month and terminated his employment and participation in the residency program.  It is the termination that is the subject matter of the pending Massachusetts Case.

Prior to his residency at SVH, Dr. Garg completed two years of his radiology residency program at the University of Oklahoma's College of Medicine Department of Radiology.  The University and Dr. Garg entered into a Confidential Settlement Agreement prior to him moving to Massachusetts.  His employment at the University, along with the Confidential Settlement Agreement, is the information sought in the subpoena that Dr. Garg moves this Court to quash.

## PROCEDURAL BACKGROUND

After his termination, Dr. Garg pursued the various stages of an internal appeal process at SVH to contest his termination. In January 2018, after exhausting the internal appeal process, Dr. Garg then submitted his claims for arbitration at the American Health Law Association ("AHLA").

In August 2018, Dr. Garg asked to withdraw from the arbitration without prejudice after he was unable to pay a $12,000 deposit and told by Respondent's counsel that arbitration was an "option."

Meanwhile, in May 2018, Dr. Garg initiated a breach of contract action against the University in the District Court for Cleveland County, Oklahoma. *See Ashu Garg, M.D. v. The Board of Regents of the University of Oklahoma*, No. CJ-2018-628 (the "Oklahoma Case"). As part of that action, Dr. Garg has asserted that the University breached the Confidential Settlement Agreement by disclosing to SVH information the University expressly promised to protect and keep confidential. That matter is currently scheduled for a jury trial on January 24, 2022.

On May 28, 2020, Dr. Garg initiated the Massachusetts Case against Respondents in the United States District Court for the District of Massachusetts.[2] Among other claims, Dr. Garg's complaint in the Massachusetts Case asserts claims of age discrimination in violation of the ADEA and Chapter 151B.

## **ARGUMENT**

Where a party issues a subpoena to a non-party demanding the production of documents, the court for the district where compliance with the subpoena is required[3] must quash or modify the subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Moreover, "[b]ecause a subpoena served on a

---

[2]       The complaint in that matter, along with exhibits to the complaint, are attached hereto as <u>Exhibit 1</u>.

[3]       In this case, the Subpoena requests documents to be produced in Oklahoma City, and therefore the U.S. District Court for the Western District of Oklahoma is the court where compliance is required. *See RSUI Indem. Co. v. Nat'l Rifle Ass'n of Am.*, No. MC-20-6-D, 2020 WL 4194526, at *1 (W.D. Okla. July 21, 2020) ("Most courts agree that the district where compliance is required is determined by the location or place of compliance identified in the subpoena.").

third party pursuant to Rule 45 is considered discovery within the meaning of the rules… the scope of discovery in Rule 26(b)(1) applies." *Supply Chain Prod., LLC v. Loves Travel Stops*, No. MC-21-1-D, 2021 WL 3633489, at *2 (W.D. Okla. Aug. 17, 2021); *Copeland v. C.A.A.I.R., Inc.,* No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *2 (N.D. Okla. Feb. 28, 2020) ("A subpoena is … subject to Rule 26(b)(1)'s requirements and must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case.").

"While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." *Supply Chain Prod., LLC*, 2021 WL 3633489, at *2 (citation omitted). On the one hand, when a discovery request appears relevant, a party may oppose that request if "it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. … A party resisting discovery on the ground that the requests are overly broad has the burden of supporting its objection, unless the request is overly broad on its face." *Morgan v. Ramsey*, No. 11-CV-451-TCK-PJC, 2012 WL 12837281, at *3 (N.D. Okla. Oct. 26, 2012). Conversely, "when the request is overly broad on its face or when relevance is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Deela v. Annett Holdings, Inc.*, No. CV-17-483-KEW, 2018 WL 11255592, at *1–2 (E.D. Okla. June 25, 2018) (citation omitted).

In this case (as will be detailed further below), the requests in the Subpoena are overly broad on their face and do not appear to have any relevant purpose except to harass Dr. Garg. Moreover, these requests will not lead to the discovery of admissible evidence (but rather inadmissible character evidence), and Dr. Garg's privacy interests in these documents outweighs any purported relevance. Finally, the requests call for the production of documents covered by the

settlement privilege, and are not limited with respect to attorney-client privileged communications. Therefore, the Subpoena should be quashed.

1. **THE DOCUMENTS REQUESTED IN THE SUBPOENA ARE IRRELEVANT TO THE MASSACHUSETTS CASE AND WOULD BE INADMISSIBLE.**

Dr. Garg's employment records from the University, and his Confidential Settlement Agreement at the University, have no relevance to the Massachusetts Case, particularly since Dr. Garg was employed at the University *before* he was employed at SVH. In a case of employment discrimination where the employee was terminated, certain documents from *subsequent* employers may be relevant for purposes of determining whether the plaintiff sought to mitigate his damages; however, here the Subpoena "seeks employment records from [a] former employer[]. Mitigation relates to plaintiff's diligence in seeking employment after termination. The discovery of former employment records has no bearing on that issue." *Lewin v. Nackard Bottling Co.*, No. CV 10-8041-PCT-FJM, 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010)

Respondents argue that the employment records and Confidential Settlement Agreement are relevant because they might demonstrate Dr. Garg's propensity for poor performance in radiology residencies (if there are any negative evaluations), or Dr. Garg's litigious behavior against his employers. However, this constitutes character evidence, which is inadmissible under the Federal Rules of Evidence, Rule 404(a):

> The court finds that evidence of the plaintiff's performance history is neither relevant nor admissible for the purpose of showing that the plaintiff performed poorly in his position with the defendant. First, the plaintiff's performance history is not relevant to the issues involved in the current case; rather, at issue is the plaintiff's **performance in his position with the defendant**. Second, the defendant's request for production of documents relating to the plaintiff's performance history is not reasonably calculated to lead to the discovery of admissible evidence. The defendant seeks to discover evidence of the plaintiff's performance history in order to show that he has a propensity for certain performance deficiencies. Such evidence is inadmissible under Federal Rule of Evidence 404(a)….

6

*Chamberlain v. Farmington Sav. Bank*, No. 3:06CV01437 CFD, 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007) (quashing subpoena served on plaintiff's former employer) (emphasis added); *Lewin*, 2010 WL 4607402, at *2 (same; "an attack on plaintiff's credibility by introducing evidence of his character in another employment setting is likely inadmissible propensity evidence").

Respondents also argue that the documents requested by the Subpoena are relevant because the Confidential Settlement Agreement with the University is referenced in Dr. Garg's complaint in the Massachusetts Case, specifically: "Despite a Confidentiality Agreement, upon information and belief, Dr. Bader learned additional information about Dr. Garg from [the University], evident from comments made by SVH later on, that demonstrated an undue bias toward the evaluation of Dr. Garg's performance."

However, the mere fact that the Confidential Settlement Agreement is mentioned in the complaint does not make the requested documents relevant. "[T]he scope of permissible discovery is not based solely on whether a transaction is expressly mentioned in the complaint. The proper inquiry instead is whether the information sought is relevant to the parties' claims and defenses and proportional to the needs of the case." *Trabulsi v. Wells Fargo Bank, Nat'l Ass'n*, No. 817CV02088JLSSK, 2018 WL 6444892, at *1 (C.D. Cal. Aug. 21, 2018) (citing Fed. R. Civ. P. 26(b)); *Vives v. City of New York*, No. 02 CIV. 6646 JSMHBP, 2003 WL 282191, at *1 (S.D.N.Y. Feb. 10, 2003) ("If a party could unilaterally alter the scope of discovery merely by including extraneous allegations in the complaint, the limitations on discovery contemplated by Rule 26 quickly become a dead letter."); *Gottlieb v. Amica Mut. Ins. Co.*, No. CV 20-10509-DJC, 2021 WL 1839602, at *3 (D. Mass. May 7, 2021) (noting that whether something is specifically alleged in the complaint is "too narrow" a view in determining relevance).

Moreover, in an employment discrimination case, an employee's performance for another employer is not relevant, since "the factual issue at trial will be what [the employer] knew ... **at the time of the alleged discrimination**." *EEOC v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 3 (D. Mass. 2014) (emphasis added); *Williams v. United States Env't Servs., LLC*, No. CV 15-168-RLB, 2016 WL 684607, at *3-*6 (M.D. La. Feb. 18, 2016) ("To establish its given reason for terminating Plaintiff, Defendant must present evidence of the actual sub-standard performance observed by Defendant, not some other employer. Any new records from other employers could not have motivated Defendant's decision at the time it was made and are therefore irrelevant."); *E.E.O.C. v. Midwest Reg'l Med. Ctr., LLC,* No. CIV-13-789-M, 2014 WL 3352982, at *2 (W.D. Okla. July 9, 2014) ("The issue in this case is whether MRMC discriminated against Withers…. The Court finds that the employment records of Withers' six pre-MRMC employers are still not relevant.").

Although Dr. Garg maintains that none of the records sought in the Subpoena are relevant, for the sake of argument, the absolute most that Respondents could argue are relevant would be anything that the University already conveyed to Respondents prior to Dr. Garg's termination. But even assuming that is true, it would still be grounds to quash the Subpoena because: (1) there are no limitations in the Subpoena that restrict production to that effect; and (2) any such documents or information would already be in the possession, custody, or control of Respondents, therefore making the Subpoena entirely redundant. Exactly what the University did or did not convey to Respondents can be adequately resolved in the course of discovery between the parties to the Massachusetts case (e.g., by inquiring into this area during a deposition of Dr. Bader).

But it is clear that Respondents are not interested in obtaining what they already know from the University. They have issued this Subpoena for quite the opposite reason—they want

information that they did <u>not</u> know at the time of Dr. Garg's termination. Therefore, as the Subpoena seeks irrelevant information, it should be quashed.

**2. DR. GARG'S PRIVACY INTEREST IN THE DOCUMENTS AND THE RESULTING PREJUDICIAL EFFECTS OF DISCLOSURE OUTWEIGH ANY ALLEGED BENEFITS OR RELEVANCE IN THE MASSACHUSETTS CASE.**

Setting aside relevancy and admissibility, and assuming that the documents requested by the Subpoena have some small degree of relevance (which we dispute), the Subpoena should still be quashed because, in the words of Rule 26(b)(1), these documents are not "proportional to the needs of the case," particularly given Dr. Garg's privacy interests.

The majority of the documents requested related to Dr. Garg's employment records—i.e. his personnel file, which contains private information and thus, "discovery concerning them should be limited." *E.E.O.C.*, 303 F.R.D. at 2; *see also Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995) ("[P]ersonnel files contain perhaps the most private information about an employee within the possession of an employer."); *Deela v. Annett Holdings, Inc.*, No. CV-17-483-KEW, 2018 WL 11255592, at *1–2 (E.D. Okla. June 25, 2018) ("Completely unfettered production of a personnel file is discouraged. … Personnel files often contain sensitive personal information which may have no bearing upon the issues in the litigation but may cause embarrassment, harassment, or oppression."); *Fisher v. Glanz*, No. 14-CV-678-TCK-PJC, 2016 WL 4411411, at *1 (N.D. Okla. Aug. 18, 2016), citing *Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008) ("[P]ersonnel files often contain sensitive personal information ... and it is not unreasonable to be cautious about ordering their entire contents disclosed will-nilly."). As such, because the Subpoena as presently worded would require the production of Dr. Garg's entire personnel file, it should be quashed. *Cf. E.E.O.C. v. Renaissance III Org.*, No. 3-05-CV-1063-B,

2006 WL 832504, at *1 (N.D. Tex. Mar. 30, 2006) (quashing subpoenas requesting "the wholesale production of confidential employment records" from charging parties' former employers and noting the "privacy interests far outweigh any likely benefit").[4]

Ordering disclosure of all of Dr. Garg's employment-related (and student-related) records not only violates his reasonable expectations of privacy with respect to these records, but it has the uniquely adverse effect of jeopardizing the outcome of the Oklahoma Case. That case ultimately centers on not only *what* the University disclosed to Respondents about Dr. Garg's employment with the University (in violation of the Confidential Settlement Agreement), but also *when* this information was disclosed. To the extent that Respondents are permitted to obtain these records now, they may claim at trial in the Oklahoma Case that they only learned certain information about Dr. Garg's employment with the University after serving the Subpoena (rather than, as Dr. Garg maintains, around the time when he was first hired by SVH).

Given Dr. Garg's privacy interests in these records, as well as the prejudice that would result to Dr. Garg if they were disclosed, the information that Respondents seek is not proportional to the needs of the Massachusetts Case, which is "a fairly routine case alleging individual employment discrimination." Williams v. United States Env't Servs., LLC, No. CV 15-168-RLB, 2016 WL 684607, at *3 (M.D. La. Feb. 18, 2016); Perry v. Best Lock Corp., No. IP 98-C-0936-

---

[4]       Similarly, these documents may also have an additional layer of confidentiality as educational records that further outweighs the benefits of disclosure. Under the Family Educational Rights and Privacy Act ("FERPA") and its applicable regulations, educational institutions are required in certain instances to receive written consent from a parent or eligible student in order to disclose personally identifiable information from the student's education records. *See* 34 C.F.R. § 99.30. Even though FERPA does not explicitly create a privilege against disclosure, courts have nonetheless utilized the privacy interests under FERPA in determining whether to quash subpoenas seeking educational records. *See, e.g., Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 526-27 (N.D. Ga. 2012) (quashing a request for educational records based in part on the privacy rights protected by FERPA). It is unclear whether FERPA explicitly applies to medical residencies, but in any case, "[a] medical residency is a hybrid position in which the resident is both a student and an employee." *Fenje v. Feld*, 301 F. Supp. 2d 781, 801 (N.D. Ill. 2003); *see also MacKenzie v. Ochsner Clinic Found.*, No. CIV.A. 02-3217, 2003 WL 21999339, at *3 (E.D. La. Aug. 20, 2003) (denying motion to compel educational records of non-party residents in residency program where consent to disclosure had not been obtained under FERPA).

H/G, 1999 WL 33494858, at *2 (S.D. Ind. Jan. 21, 1999) ("If filing ... a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous ... employers, there is a serious risk that such discovery can become 'an instrument for delay or oppression.' ").

### 3.   THE DOCUMENTS REQUESTED IN THE SUBPOENA ARE PRIVILEGED.

Some jurisdictions recognize a settlement privilege barring the disclosure of settlement communications/negotiations in the course of discovery. *See, e.g., St. Paul Mercury Ins. Co. v. Dick Corp.*, No. 025195, 2005 WL 2525300, at *1 (Mass. Super. Sept. 7, 2005) (exempting production of correspondence "protected by the mediation or settlement privilege"). As explained by the Sixth Circuit:

> There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications. Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of "impeachment evidence," by some future third party. Parties must be able to abandon their adversarial tendencies to some degree. They must be able to make hypothetical concessions, offer creative *quid pro quos,* and generally make statements that would otherwise belie their litigation efforts. Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.
>
> [...]
>
> The public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein, leads us to conclude that a settlement privilege should exist....

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980–82 (6th Cir. 2003). In this case, as the Subpoena commands the production of "any and all communications … that concern, refer to, relate to, evidence, or reflect the Confidential Settlement Agreement," the requested communications are squarely within the settlement privilege.

Although other jurisdictions do not recognize the existence of the settlement privilege, even in those jurisdictions, courts typically require a showing of some special need for the settlement agreement and/or any documents/communications related to it. *See, e.g., Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) ("Given the strong public policy of favoring settlements and the congressional intent to further that policy by insulating the bargaining table from unnecessary intrusions, we think the better rule is to require some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement."). Likewise, U.S. District Court for the Northern District of Oklahoma has indicated that a party seeking disclosure of confidential settlement communications must demonstrate: "(1) a special need for the materials; (2) unfairness would result from a lack of discovery of the materials; and (3) the need for the evidence outweighs the interest in maintaining confidentiality." *United States ex rel. Strauser v. Stephen L. Lafrance Holdings, Inc*, No. 18-CV-673-GKF-FHM, 2019 WL 6012850, at *2 (N.D. Okla. Nov. 14, 2019).

Even if this Court were to conclude that there is no settlement privilege, Respondents have failed to show how obtaining the Confidential Settlement Agreement, or documents/communications concerning the Confidential Settlement Agreement, will lead to the discovery of admissible evidence. The communications themselves would be inadmissible under Rule 408 of the Federal Rules of Evidence. Nor have Respondents shown a particular need for this material, that it would be unfair for them without obtaining it, or that their need for the evidence

outweighs the interest in maintaining confidentiality. Further, even if the Respondents are seeking some sort of admissible evidence, they have not demonstrated that they are unable to obtain this information through ordinary discovery requests to Dr. Garg.

But the requests in the Subpoena do not just potentially violate the settlement privilege. They also implicate the attorney-client privilege and work product doctrine. For example, the request for "any and all communications … that concern, refer to, relate to, evidence, or reflect the Confidential Settlement Agreement" would naturally include privileged communications between the University and its attorneys, and the Subpoena does not purport to limit itself to non-privileged communications. Similarly, the request for "any and all documents that concern, refer to, relate to, evidence, or reflect ASHU GARG'S termination from employment" may include records from the University's counsel prepared in anticipation of possible litigation. Therefore, the Subpoena should be quashed.

### 4.  THE REQUESTS IN THE SUBPOENA ARE FACIALLY OVERBROAD.

All the Subpoena requests are overbroad, which provides yet another reason that the Subpoena should be quashed. For example, the Subpoena commands production of "any and all documents" that "concern, refer to, relate to, evidence, or reflect" Dr. Garg's participation in the University's radiology residency program, his application from employment, and his termination. "Blanket requests of this kind are plainly overbroad and impermissible." *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (quashing subpoena issued to plaintiff's former employer for "[a]ll documents and communications, whether paper, electronic or other media, referring or relating to [plaintiff] including but not limited to personnel files, disciplinary files, and any other employment

documents or records," and citing other cases where the phrase "any and all documents" had been ruled as overbroad).

Additionally, the breadth of these requests indicate that Respondents are engaging in nothing more than a "fishing expedition." *Lewin v. Nackard Bottling Co.*, No. CV 10-8041-PCT-FJM, 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010) ("[D]efendant's request to obtain plaintiff's entire personnel file from five former employers is, on its face, overbroad and not reasonably calculated to lead to the discovery of admissible evidence."); *Richards v. Convergys Corp.*, No. 2:05-CV-00790DAK, 2007 WL 474012, at *4 (D. Utah Feb. 7, 2007) ("a blanket request for all documents regarding Richards' employment is overly broad"); *E.E.O.C. v. Unit Drilling Co.*, No. 13-CV-147-TCK-PJC, 2014 WL 130551, at *4 (N.D. Okla. Jan. 13, 2014); *E.E.O.C. v. S. Haulers*, LLC, No. CIV.A. 11-00564-N, 2012 WL 1768064, at *5 (S.D. Ala. May 17, 2012).

Indeed, the Subpoena goes a step further than some of the subpoenas that were quashed in the aforementioned cases. For example, in *Lewin*, the court held that seeking the entire personnel file of prior employers was overly broad—but here, the requests would not only encompass Dr. Garg's entire personnel file, but (essentially) "any and all documents" concerning his employment. Therefore, the Subpoena should be quashed.

## 5. THE SUBPOENA IS DESIGNED TO HARASS DR. GARG AND THEREFORE RESPONDENTS SHOULD BE ORDERED TO PAY HIS ATTORNEYS' FEES.

"By signing, an attorney or party certifies that … with respect to a discovery request… it is… not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation…." Fed. R. Civ. P. 26(g)(1)(B)(ii); *see Bays Expl., Inc. v. Pensa, Inc.*, No. CIV-07-0754-D, 2009 WL 10674502, at *2 (W.D. Okla. Aug. 20, 2009) (noting this as part of party's obligation in serving a subpoena on a third party). "If a certification violates

this rule without substantial justification, the court, on motion or on its own, **must** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3) (emphasis added). In addition to being sanctionable, such harassment is also independent grounds to quash a subpoena. *See, e.g., Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (court should consider whether a subpoena was primarily issued for purposes of harassment in determining whether to quash it).

The "central issue" under Rule 26(g) is whether "a reasonable inquiry into the facts and law supporting the pleading" was conducted. *Stout v. Long*, No. CV 14-427 WPJ, 2018 WL 1322051, at *4 (W.D. Okla. Mar. 14, 2018) (citation omitted). Respondents' counsel were put on notice of the myriad of issues with the Subpoena in a letter from Dr. Garg's counsel. *See* Exhibit 2. Yet Respondents refused to back down even though, as further demonstrated through this memorandum, the Subpoena is irrelevant, facially overbroad, and seeks privileged/confidential information. Respondents' counsel has clearly not conducted a reasonable inquiry into the law concerning the Subpoena.

Moreover, given the Respondents' history of unfair and overly aggressive tactics in both the Massachusetts case and other forums,[5] Respondents' only conceivable purpose in issuing the

---

[5]      For example, Dr. Garg withdrew his arbitration complaint in reliance on Respondents' assertions that arbitration was an option, so that he could proceed with the Massachusetts Case. But after Dr. Garg filed the Massachusetts Case, Respondents entirely reversed course by filing a Motion to Dismiss and Compel Arbitration, claiming that arbitration should have been mandatory pursuant to another policy that was not produced during the AHLA arbitration. Because of the procedural rules at the AHLA, Dr. Garg would not have had to pay a $12,000 deposit if the Respondents had produced this alleged mandatory arbitration policy, which was precisely why he had to withdraw from the arbitration in the first place.

Courts have described similar conduct as "**chameleonic gamesmanship**," and "**a mockery of justice**." *See U.S. ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11-CV-58, 2014 WL 7272598, at *28 (S.D. Ga. Dec. 18, 2014). Thankfully, Judge Hillman in the Massachusetts Case came to the same conclusion, denying the Motion to Dismiss

Subpoena is to harass Dr. Garg and needlessly increase the cost of litigation. Respondents likely anticipated that Dr. Garg would be compelled to file the present motion, in order to protect his privacy interests. Dr. Garg is an individual with limited resources. SVH, on the other hand, is a large corporation. Their tactics have been obvious: they are harassing Dr. Garg to deter him from pursuing his claims, in the hopes that he will run out of funds or simply give up. Accordingly, they should be sanctioned, and ordered to pay Dr. Garg's reasonable attorney fees in connection with this motion.

## **CONCLUSION**

WHEREFORE, Dr. Garg respectfully requests that this Honorable Court quash the Subpoena and grant him his reasonable attorneys' fees and costs.

Respectfully submitted,
ASHU GARG
By his attorney,

_/s/ Tony Gould_____
Tony Gould, OBA # 18564
BROWN & GOULD, PLLC
136 N. W. 10th, Suite 200
Oklahoma City, OK 73103
(405) 235-4500
tgould@browngouldlaw.com

Date: October 19, 2021

---

and Compel Arbitration. Judge Hillman reasoned that Respondents should be equitably estopped from mandating arbitration because they had misrepresented the mandatory nature of arbitration.

The Respondents continued to engage in their unreasonable behavior even as discovery began in the Massachusetts case. Pursuant to Massachusetts' local rules, Dr. Garg drafted a proposal for various discovery deadlines, with a customary 6-7 month period allowed for discovery. Counsel for Respondents countered with a proposed 3-4 month discovery period, knowing that Dr. Garg would be out of the country later that year for an extended time, and without offering any explanation for this extremely short discovery period. Although Dr. Garg offered to compromise, Respondents refused to budge. As a result, Judge Hillman chastised Respondents during a scheduling conference, noting that they "**had [his] attention**," and entered a scheduling order that fully complied with Dr. Garg's requests.

### CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2021, I caused to be served a true and correct copy of the foregoing document, and all of its attachments, by first-class mail, postage prepaid, and by email, on:

Diane M. Saunders, Esq. and Olivia L. Vehslage, Esq.
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
diane.saunders@ogletreedeakins.com
olivia.vehslage@ogletreedeakins.com


Mihcael Burrage, Esq., J. Renley Dennis, Esq., and Austin Vance, Esq.
Counsel for Non-Party Board of Regents of the University of Oklahoma
WHITTEN BURRAGE
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
mburrage@whittenburragelaw.com
jdennis@whittenburragelaw.com
avance@whittenburragelaw.com

_/s/ Matthew Perry_____
Matthew Perry