## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ASHU GARG, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. MC-21-05-R |
| | ) |
| VHS ACQUISITION SUBSIDIARY NO. 7, | ) |
| INC., d/b/a SAINT VINCENT HOSPITAL; | ) |
| DAVID BADER; JOHN MUKAL; and | ) |
| DOUGLAS BURD, | ) |
| | ) |
| Respondents. | ) |

## ORDER

Before the Court is the Petition to Quash Non-Party Subpoena filed by Dr. Ashu Garg ("Petitioner or Dr. Garg"). Doc. No. 1. Dr. Garg seeks to quash a non-party subpoena issued to the Board and Regents of the University of Oklahoma. The matter is fully briefed and is at issue. For the reasons below, the Court DENIES the Petition.

The underlying lawsuit for this discovery dispute originates in the United States District Court for the District of Massachusetts. Petitioner is a medical doctor who was, until August of 2017, a radiology resident at Defendant Saint Vincent Hospital ("SVH") in Worcester, Massachusetts. Doc. No. 2-1 at 2, 13. Dr. Garg alleges SVH and its employees Dr. David Bader, Dr. John Mukal, and Dr. Douglas Burd (collectively "Respondents") illegally discriminated against him because of his age under both federal and Massachusetts law. He further asserts SVH breached his employment agreement, violated the implied covenant of good faith and fair dealing, and tortiously interfered with certain contractual relations. Doc. No. 2-1 at 2.

Prior to his residency at SVH, Dr. Garg was a resident at the University of Oklahoma College of Medicine in the Department of Radiology ("OU"). Doc. No. 2 at 3. In discovery for the Massachusetts litigation, Respondents seek information related to Dr. Garg's time as a resident at OU.[1] Specifically, Respondents request that OU provide the following:

> 1. Produce any and all documents that refer to, relate to, evidence, or reflect in any way to the application of ASHU GARG for employment and/or participation in the radiology residency program, including his job applications, resume, and correspondence.
>
> 2. Produce any and all documents that concern, refer to, relate to, evidence, or reflect ASHU GARG'S participation in the radiology residency program at THE UNIVERSITY OF OKLAHOMA, including but not limited to any documents relating to his performance, evaluation of that performance, remediation, and reference letters sent on his behalf.
>
> 3. Produce any and all documents that concern, refer to, relate to, evidence, or reflect ASHU GARG'S termination from employment and/or the radiology residency program by THE UNIVERSITY OF OKLAHOMA.
>
> 4. Produce the Confidential Settlement Agreement between ASHU GARG and THE UNIVERSITY OF OKLAHOMA.
>
> 5. Produce any and all communications and documents that concern, refer to, relate to, evidence, or reflect the Confidential Settlement Agreement between ASHU GARG and THE UNIVERSITY OF OKLAHOMA.
>
> 6. Produce any and all documents concerning communications between DAVID A. BADER, M.D., F.A.C.R. and THE UNIVERSITY OF OKLAHOMA regarding ASHU GARG.
>
> 7. Produce any and all communications with ASHU GARG which concern, refer or relate to his departure from THE UNIVERSITY OF OKLAHOMA, including but not limited to the circumstances surrounding his departure.

---

[1] According to Dr. Garg's filing, he completed two years of residency at OU and his departure from the program was covered by a Confidential Settlement Agreement ("CSA"). Doc. No. 2 at 3. Dr. Garg is currently litigating a breach of settlement claim based on the CSA against OU in District Court of Cleveland County, Oklahoma. *See* Doc. No. 13-1. He alleges OU breached the agreement by failing to support his candidacy for admission to SVH by illicitly sending non-supportive information to Respondent Dr. Bader. *Id.* at 9.

Doc. No. 1-1 at 7–8 (emphasis in the original).

Respondents' requests to the University can be effectively addressed by grouping the issues. Categories 1–3 and 7 relate to Dr. Garg's tenure at OU, from his application to his departure. They also seek additional details regarding his performance while there. Although categories 4 and 5 touch on these same issues, they are more directly related to the Confidential Settlement Agreement ("CSA") that accompanied Dr. Garg's departure from OU, and Petitioner argues the CSA is privileged. Common to all categories 1–5 and 7 are Dr. Garg's privacy interest, which he contends shields all these items from discovery for the purposes of the litigation pending in the District of Massachusetts. Finally, category 6 addresses the communications, including internal communications at OU, related to what, if anything, was communicated to Dr. Bader. Petitioner additionally argues that the subpoena, when taken as a whole, is overbroad and designed to harass. Doc. No. 2 at 2. He therefore requests attorney's fees and sanctions leveled against the Respondents. *Id*.

Respondents counter that the sought-after evidence is relevant because all the subpoenaed categories could make it more probable that Dr. Garg was incapable of completing his residency at SVH. Doc No. 13 at 12. Respondents desire to use any such information to demonstrate that it was Petitioner's lack of academic preparedness that led to SVH terminating his residency, not illegal age discrimination. *Id*. Additionally, Respondents claim Petitioner has put his prior employment and the CSA at issue in his claims. *Id*. at 5. They argue his employment records and the CSA are necessary because Petitioner is claiming substantial loss of future earnings as an item of damages. *Id*. Respondents contend Petitioner's loss of future income claim hinges on whether Dr. Garg

3

would have been successful academically and professionally but-for Respondents' alleged discrimination—something only a complete review of Dr. Garg's academic record can provide. *Id*. at 15–17. Respondents also claim that there are no barriers to the subpoena related to privacy because Dr. Garg waived confidentiality by disclosing the CSA in various court filings and because there is a protective order in place issued by the District of Massachusetts. *Id*. Finally, they argue any disagreements on whether material is admissible at trial can be adjudicated by the District of Massachusetts. *Id*.

First, the Court must determine whether Petitioner has standing to challenge a subpoena issued to a non-party to the Massachusetts litigation.

> A party has no standing to attempt to quash a subpoena served on a third party except as to claims of privilege or upon a showing that a privacy interest is implicated. *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) ("[a]bsent a specific showing of a privilege or privacy, a court cannot quash a subpoena *duces tecum*"); *see also Broadcort Capital Corp. v. FlaglerSecs. Inc*, 149 F.R.D. 626, 628 (D. Colo. 1993). Courts in the Tenth Circuit have held that a party has standing to challenge a subpoena served on a third party only based on privilege or a personal proprietary interest. *Howard v. Segway, Inc*, No 11-CV-688-GFK-PJC, 2012 WL 2923230, at *2 (N.D. Okla. July 18, 2012) (citing *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18 (D.D.C. 2005)). Objections unrelated to a claim of privilege or privacy are not proper bases upon which a party may quash a third-party subpoena. *Windsor*, 175 F.R.D. at 668; *see also Oliver B. Cannon & Son, Inc. v. Fidelity & Cas. Co. of N.Y.*, 519 F. Supp. 668, 680 (D. Del. 1981) (movant lacks standing to raise objections unrelated to any right of privilege).

*Scott v. Antero Res. Corp.*, No. 1:17-CV-00693-WJM-SKC, 2020 WL 7212169, at *2 (D. Colo. Feb. 6, 2020). Absent standing by the Petitioner or a valid claim of privilege or confidentiality, the Court may nevertheless limit the scope of the discovery sought on the basis of relevance.

4

> In cases where a moving party lacks standing to challenge a third-party subpoena, a court may exercise its inherent authority to limit irrelevant or non-proportional discovery requests pursuant to Federal Rule of Civil Procedure 26(b)(2)(C). *See* Fed. R Civ. P. 26(b)(2)(C)(iii) (explaining that court "must limit the frequency or extent of discovery" if court determines that proposed discovery is outside the scope permitted by Rule 26(b)(1)); *Gov't Employees Ins. Co. v. Trnovski*, No. CV 16-4662 (CCC), 2018 WL 5281424, at *3 (D. N.J. Oct. 23, 2018) ("Although the Court finds that defendants lack standing to quash the Subpoenas, the Court will nevertheless address whether the information that Plaintiffs seek is relevant under Rule 26.").

*Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-56-4-TCK-JFJ, 2020 WL 972754, at *3 (N.D. Okla. Feb. 28, 2020).

Plaintiff relies on his privacy interest to provide him standing to challenge all seven categories in the subpoena. The Court agrees that Plaintiff has a clear privacy interest in his prior employment records and the CSA, which covers categories 1–5 and 7. However, although the communications between OU and Dr. Bader were discussions about the Petitioner, he has limited privacy interests in the discussions between other parties. The Court will therefore grant Dr. Garg standing to challenge categories 1–5 and 7 based on his privacy interest, deny Petitioner standing to challenge category 6, and review all categories for relevance and proportionality.

The Federal Rules of Civil Procedure govern discovery. Under Rule 45, the Court for the district where compliance is required, on timely petition, "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). A party desiring to quash a subpoena, "has no standing . . . to quash a subpoena served on a third party except as to claims of privilege or upon a showing that a privacy interest is implicated." *Mona Vie, Inc. v. Amway*

5

*Corp.*, No. 08-CV-02464-WDM-KLM, 2009 U.S. Dist. LEXIS 20288, 2009 WL 524938, at *3 (D. Colo. Mar. 2, 2009). After demonstrating such standing, the party requesting that the subpoena be quashed must show "[a] finding of good cause . . . based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). "The Court balances the harm of disclosure against the harm to the [respondent] party of restricting discovery." *London-Sire Records v. Doe 1*, 542 F. Supp. 2d 153, 162 (D. Mass. 2008).

With these standards in mind, the Court turns to Respondents' specific requests in the subpoena. Categories 1–5 and 7 ask for "any and all" documents and communications related to Dr. Garg's time at OU. Doc. No. 1-1 at 7–8. Petitioner asserts his privacy interest should quash the subpoena related to these categories, and his expectation to privacy outweighs any interest Respondents may have in obtaining the material, which he deems "irrelevant to the Massachusetts case." Doc. No. 2 at 2. Specifically, he argues his prior performance at OU is irrelevant because SVH has already implicitly acknowledged Petitioner was qualified to complete his residency by hiring him into their program as a radiology resident and renewing his contract after his first year. Doc. No. 17 at 5–7. The Court, however, sees things differently.

Pursuant to the Federal Rules of Civil Procedure, unless decided otherwise by a court, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Relevant evidence is defined in Federal Rule of Evidence 401 as evidence having "any tendency" to make a fact

6

that is of consequence in determining the action more or less probable than it would be without the evidence. When evaluating discovery disputes, "[c]ourts should liberally construe the scope of discovery under rule 26; the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649 (D.N.M. 2007) (internal citations and quotations marks omitted).

According to Dr. Garg's complaint, SVH's decision to terminate him from his residency caused Dr. Garg the loss of future wages. Doc. No. 2-1 at 17–18. Petitioner argues that by depriving him of the opportunity to graduate, Respondents deprived him of his chance to take his radiologist licensing exams, his follow-on fellowship position at New York University Medical Center, and, ultimately, a lucrative career as a radiologist. *Id.* In his "Plaintiff's Automatic Disclosures" [Doc. 13-3], Dr. Garg valued this item of damages at $4.2 million. *Id.* at 3. This alleged loss makes up the bulk of Petitioner's claimed damages, which he values at approximately $4.75 to $4.95 million. *Id.* at 4. Such calculations inherently assume Dr. Garg would have, but for Respondents' actions, successfully finished residency, his follow-on fellowship, and that he would have been a successful radiologist after completing his education. Dr. Garg has clearly placed his long-term career success at issue. Thus, it is logical to look at the totality of his medical career—including prior medical employment—to determine if he would indeed have been a successful radiologist.

The liberal nature of the Rule 26 combined with the potentially relevant information regarding Dr. Garg's career prospects sought in the subpoena weigh decisively in favor of

7

permitting discovery. *See Deela v. Annett Holdings, Inc.*, No. CV-17-483-KEW, 2018 WL 11255592, at *1 (E.D. Okla. June 25, 2018) ("The express elements of damages sought by Plaintiff makes other documentation contained in the personnel files potentially relevant to this action, including his claims for lost wages and loss of earning capacity."); *See also Cady v. Superior Pool Prods.*, LLC, No. 13-cv-1533, 2014 U.S. Dist. LEXIS 161526, at *5 (C.D. Ill. Nov. 18, 2014) ("Evidence of [petitioner's] past employment may also be relevant to calculation of damages."). Therefore, Dr. Garg's privacy interest does not outweigh the Respondents' interest in obtaining potentially relevant discovery regarding all the categories at issue in the subpoena. The Court therefore denies the petition as to categories 1–3 and 7 and turns its attention to Petitioner's second argument for shielding categories 4 and 5 from discovery.

Petitioner claims that categories 4 and 5 are privileged. Doc. No. 2 at 11–13. "The party who invokes a privilege to avoid a discovery request bears the burden of showing that it applies." *Bingham v. Supervalu Inc.*, No. 13-11690-IT, 2014 U.S. Dist. LEXIS 201041, at *13 (D. Mass. July 11, 2014). Dr. Garg has cited only Sixth Circuit precedent as having adopted a discrete settlement privilege. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980-82. (6th Cir. 2003) (recognizing a settlement privilege). The First Circuit has not recognized a separate settlement privilege. *Cook v. CTC Communs. Corp.*, No. 06-cv-058-JD, 2006 U.S. Dist. LEXIS 86310, at *5 (D.N.H. Nov. 13, 2006) ("it is far from being clearly established that any federal settlement privilege exists."). The Tenth Circuit has also found confidential settlements are discoverable and not privileged, holding, "[a] settlement's confidentiality does not bar discovery." *Burke v.*

8

*Regalado*, 935 F.3d 960, 1048 (10th Cir. 2019) (citing *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684-85 (D. Kan. 2004) ("[A] general concern for protecting confidentiality does not equate to privilege.")). The Court, therefore, declines to find there is a settlement privilege in this case. Having already determined categories 4 and 5 are relevant, the court will thus deny the petition as to those categories.

Finally, the Court will address category six and Dr. Garg's claims that the subpoena is overbroad. The Court has already determined Petitioner lacks standing to challenge category 6 and finds Dr. Garg does not have a privacy or privilege interest in claiming that the subpoena is overbroad. The Court therefore holds he lacks standing on that issue as well. *See Scott*, No. 1:17-CV-00693-WJM-SKC, 2020 WL 7212169, at *2. However, the Court will utilize its inherent authority to ensure the requested information is "within the scope permitted" pursuant to Rule 26. *Gov't Employees Ins. Co.*, No. CV 16-4662 (CCC), 2018 WL 5281424, at *3. Category 6, unlike the others, requests "any and all documents" related to OU's communication with Dr. Bader. Doc. No. 1-1 at 7–8. These communications could be relevant to determining what the University knew and communicated to Respondents regarding Dr. Garg's career prospects and academic preparedness to become a fully licensed radiologist. These fall within the scope of discovery for similar reason to the above—they are potentially relevant to Petitioner's lost wages item of damages. Furthermore, having determined all seven categories are discoverable, the Court finds they are not overbroad nor harassing. The Court therefore denies the petition as to category 6 and finds the subpoena is within the permitted scope of discovery.

For the reasons above, the Court hereby DENIES the Petition to Quash Non-Party Subpoena, its associated request for attorneys' fees, and its request for sanctions.

IT IS SO ORDERED this 6th day of December 2021.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE